IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MELTON PROPERTIES, LLC; et al.**                                                            **PLAINTIFFS**

**v.**                                       **CIVIL ACTION NO. 4:18-cv-079-DMB-JMV**

**ILLINOIS CENTRAL RAILROAD COMPANY; et al.**                      **DEFENDANTS**

**ORDER**

This matter is before the court Defendant Illinois Central Railroad Company's ("ICRR's") Motion to Compel the Production of Itemized Billing Statements Related to Plaintiffs' Damages Claims for Attorney's Fees and Expert Fees. [Doc. No. 459]. The motion has been fully briefed and oral argument held. Consistent with the court's rulings from the bench, now memorialized herein, the order was granted in part as follows:

This action arises from the derailment of an ICRR train near Minter City, Mississippi, in March 2015, which resulted in a spill of Resin Oil Heavies onto agricultural property owned and/or leased by Plaintiffs. Following the derailment, ICRR undertook certain repair and remediation activities to restore the tracks and land to pre-derailment and spill condition. In March 2018, during the pendency of continuing remediation activities by the Railroad (undertaken with oversight of Mississippi Department of Environmental Quality ("MDEQ"), Plaintiffs filed the instant lawsuit asserting federal statutory claims under the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA"), along with, numerous state common law claims, including one for gross negligence. Plaintiffs' complaint demands injunctive relief, money damages, potential future damages, punitive damages, attorney

fees, expert fees, damages for the Melton Plaintiffs' time and efforts, and costs. [Doc. No. 127] at 23.

In particular, and of relevance to the instant motion, Plaintiffs seek approximately $1.7 million in combined incurred attorney fees and expert fees. In addition, the Melton plaintiffs seek to recover compensation in an additional amount of $2.2 million as lawyers and landowners for their own time expended and mileage incurred.

Seeking to discover information regarding Plaintiffs' claimed damages, Illinois Central propounded its Second Set of Interrogatories and Second Set of Requests for Production to Plaintiffs on July 23, 2020. Interrogatory No. 13 in particular sought:

> INTERROGATORY NO. 13: For each of the following categories of alleged damages that were listed by you in your Initial Disclosures, please provide a computation of the damages claimed under each category (which should have been provided with your Initial Disclosures), explaining how your computations were made and identifying all documents and other materials upon which such computations are based. (The following categories are quoted from your Initial Disclosures):
> (a) Attorneys' fees;
> (b) Expert fees;
> (c) Costs;
> (d) Lost rent/crops through a crop share lease to also include any government payments for the crops grown;
> (e) Cost to return the property to the condition it was before the spill to include ridding the property of weeds, vines, pests and any other items controlled in farming;
> (f) Cost to return the property to the fertilization, ph levels and other soil or other needs it was before the accident;
> (g) Cost to refurbish the irrigation to the condition it was before the accident;
> (h) Diminished value of the property;
> (i) The time that our clients spent dealing with the spill (all three are lawyers and basically have had to work as consultants throughout this entire matter);
> (j) Future damages as the crops grown on the property may remain unmarketable indefinitely;
> (k) The inability to farm the property may cause our clients to be ineligible for certain federal programs;
> (1) The inability to refinance a loan on the property;
> (m) Expenses to try to help maintain the property aerial application of round up the first year, discing lately after MDEQ allowed us to;
> (n) Expenses to pump out all the pits and other prep work before our sampling event in

2017;
(o) Expenses to bush hog before events;
(p) Use of our farm house by our consultant to stay during all events has prevented having to rent hotel rooms;
(q) Expenses to hire a drone photographer during the initial clean up and then bought a drone for the second clean up since it was cheaper and more efficient to do so;
(r) The cost to really clean the site up where we can safely farm with chemical levels below hazardous levels;
(s) Damages for timber cut and cleared;
(t) Injunctive relief requiring installation of a barrier between the Plaintiffs' property and Defendant's property adequate to terminate and prevent the migration of existing contamination from the Defendant's property to the Plaintiffs' property.

By way of response to Interrogatory No. 13, Plaintiffs stated (of relevance to the instant motion) as follows:

RESPONSE: While discovery is just beginning and the Plaintiffs reserve the right to supplement the computation of the damages below, currently it appears their damages are as follows:

(a) Attorneys' fees incurred in the amount of $720,411.36 as of September 21, 2020;

(b) Expert fees paid in the amount of $422,226.75 as of September 21, 2020…

(i) The time that the Plaintiffs spent dealing with the spill is ongoing and will be supplemented….

On three subsequent occasions, Plaintiffs supplemented the foregoing response to Interrogatory No. 13(a)-(b), (i) as follows:

FIRST SUPPLEMENTAL RESPONSE: While discovery is just beginning and the Plaintiffs reserve the right to supplement the computation of the damages below, currently it appears their damages are as follows:

(a) Attorneys' fees incurred in the amount of $79,760.73 to the Spencer Law Firm as of October 9, 2020; $527,813.84 to Watkins Eager as of November 13, 2020; and $200,000 to Merkel and Cocke as of December 28, 2020, as shown on the documents bates numbered MP 025286-024363;

(b) Experts' fees incurred in the amount of $10,970.00 to the Horne Group as of April 30, 2020; $112,838.75 to SEMS, Inc., as of August 31, 2020; $307,803 to Hazclean Environmental Consultants as of November 6, 2019; and $13,142.50 to Burnside Group as of March 12, 2020, as shown on the documents bates numbered MP 025364-025397…

    (i)       The time that the Plaintiffs spent dealing with the spill is ongoing and will be supplemented shortly….

SECOND SUPPLEMENTAL RESPONSE: While discovery is just beginning and the Plaintiffs reserve the right to supplement the computation of the damages below, currently it appears their damages are as follows…

(i)       Please see the PDF 2015-03-30 to 2021-03-14 Melton time line ("MP 23418-23487") that has already been forwarded to defense counsel and sets forth the time that the Meltons have spent dealing with the derailment, charges for use of their house, UTV and ATV rentals, and mileage expense.

THIRD SUPPLEMENTAL RESPONSE: The Plaintiffs reserve the right to supplement the computation of the damages below, but believe the damages currently are as follows:

(a) Attorneys' fees incurred in the amount of $79,760.73 to the Spencer Law Firm as of February 29, 2024; $699,944.58 to Watkins Eager as of February 7, 2024; and $200,000 to Merkel and Cocke, as of December 28, 2020, for a total of $979,705.31 as shown on the documents bates numbered MP 30296 - 30413, for a total of $979,705.03.

(b) Experts' fees incurred in the amount of $307,803.00 to Hazclean Environmental Consultants, Inc., as of October 31, 2019; $279,016.25 to SEMS, Inc., as of September 29, 2023; $51,551.50 to Burnside Environmental Group, LLC, as of July 1, 2021; $13,734.00 to Scissortail Environmental Solutions, LLC, as of August 6, 2021; $24,575.00 to Stone Consulting, Inc., as of May 11, 2021; $8,905.00 to Grantham Poole, PLLC, as of February 29, 2024; $10,970.00 to Horne, LLP, as of April 30, 2020; and, $6,487.50 Alexander CPA, LLC, as of May 15, 2021, for a total of $703,042.25 as shown on the documents bates numbered MP 30414 - 30475.…

(i) The Meltons' have and continue to be required to spend time to get their property returned to the way it was just prior to CN's derailment. All three Meltons are lawyers and all also have extensive knowledge about land and farms. The Meltons have and continue to do legal and the consulting work necessary to try to have their property returned to the pre-derailment condition. The total amount of documented time expended by the Meltons through February 20, 2024 is 10,123.75 hours. The total cost for the Meltons' time is $2,134,450, their mileage reimbursement is $17,740.89, the nights used at their farm house for their consultants is $10,981, the total for use of their UTV is $28,050. The total of these is $2,191,221.89 Please see the PDF 2015-03-30 to 2021-03-14 Melton time line at MP 23418- 23487 that has been already been submitted. The Meltons' time from March 15, 2021 to February 20, 2024, is all shown on the documents bates numbered MP 30573-30596.

On or about the same date as they propounded the second set of interrogatories to Plaintiffs, including Interrogatory No. 13, ICRR propounded its second set of requests for production to Plaintiffs, including Request No. 8:

> REQUEST NO. 8: Copies of all documents identified or referenced in your responses to the Second Set of Interrogatories propounded to Plaintiffs, all documents which support, contradict, or relate to those interrogatory responses, and identify the particular documents that relate to each interrogatory response.
>
> Plaintiffs answered:
>
> RESPONSE: Please see the documents referenced herein as well as the Plaintiffs' Pre-Discovery Disclosure of Core Information and the supplements thereto.

Subsequently, Plaintiffs supplemented this response 5 times[1] with the last time occurring on June 11, 2024. The fifth supplemental response was not provided to the court for inclusion in

---

[1] FIRST SUPPLEMENTAL RESPONSE: Please see the documents referenced in the Supplemental Response to Interrogatory No. 13 that are being produced.

The Plaintiffs have bates numbered numerous documents that have been received and produced through disclosures, discovery responses and supplementations thereto, that they believe are bates numbered MP 000001 through 022303. To the extent that defense is currently not in possession of 22,303 documents produced from the Plaintiffs, the Plaintiffs request that defense counsel make their counsel aware that they are not as the Plaintiffs will immediately produce and are certainly attempting to adhere to the requirements of discovery as provided by the F.R.C.P., and any failure to produce is simply an oversight.

Since the last supplementation, the Plaintiffs have bates numbered documents MP 022304- 025683, which are being produced.

SECOND SUPPLEMENTAL RESPONSE: Since the last supplementation, the Plaintiffs have received, and are producing, the following by Box.com:
- Photos by Floyd III newly discovered;
- Photos by Moss newly discovered;
- Photos by Mark Walters newly discovered;
- GHD Emails bates numbered GHD emails as MP 26013-26728;
- 2020-12-23 Charlie Brown to Thomas Wallace-Remedial Path Letter to MDEQ.Minter City (MP 25684-25690);
- 2021-01-08 Thomas to Charlie-Minter City-General Remedial Action Path 12.23.2020- MDEQ (MP 25691-25693);
- 2021-01-08 GHD-IC Third Q GW Sampling Report (MP 25694-25974);
- 2021-01-08 CN to MDEQ EPA Chemistry Dashboard-DCPD half-life (MP 25975-25980);
- 2021-01-08 Request for Access from 1-18-21 (MP 25981);
- 2021-01-12 Turner to Wallace and Hudson MDEQ (MP 25982-25983);
- 2021-01-18 Judice to Wallace Response to January 12 letter (MP 25984-25989);

- 2021-01-18 GHD Addendum III to Pilot Study and Work Plan 11102224-00 Hudson (MP 25990-26011);
- 2021-01-18 CN Request for Access for January 25, 2021 (MP 26012);
- Response to Interrogatory No. 20 (MP 26729-26817);
- 2021-01-20 Orlansky to Wallace and Hudson MDEQ (MP 26818-26819);
- 2021-01-29 MDEQ to CN Minter City-IC Response letter 1-29-21 (MP 26820-26821);
- B&P Discovery 7 invoices (MP 26822-27040);
- 2021-01-29 Report in-Situ Chem Oxid of Source Soils-Pilot Study (MP 27041-27078);
- 2020-02-06 Request for Access 2020-02-17 (MP 27079);
- 2020-08-13 Email Connell to Beckham (MP 27080-27081);
- 2020-08-13 Email Beckham to Connell (MP 27082-27085);
- 2020-08-14 MDEQ to CN Minter City - Revised Pilot Study and Soil Sampling WP and Addendums (MP 27086-27087);
- 2020-08-14 Req for Access for Aug 24 (MP 27088);
- 2020-08-14 Email Brown to Hudson (MP 27089-27090);
- 2020-09-28 Email Connell to Beckham and Jones (MP 27091-27093);
- 2020-11-25 Email Connell to Beckham (MP 27094);
- 2020-11-25 Email Beckham to Connell (MP 27095-27098);
- 2020-11-25 Figures - Complete 2020-10-19 (MP 27099);
- 2020-11-30 Email Nathan to Melton and Hudson (MP 27100);
- 2020-12-02 Email Nathan to Melton and Hudson (MP 27101-27102);
- 2020-12-02 Email Nathan to Melton and Hudson (MP 27103-27105);
- 2020-12-03 Email Wallace to Brown and Orlansky (MP 27106-27107);
- 2020-12-03 Email Nathan to Melton and Hutson (MP 27108-27111);
- 2020-12-04 Email Nathan to Melton and Hudson (MP 27112-27116);
- 2020-12-08 Nathan to Melton and Hudson (MP 27117-27122);
- 2020-12-08 Nathan to Melton and Hudson (MP 27123-27128);
- 2020-12-09 Email Nathan to Melton and Hudson (MP 27129-27134);
- 2020-12-10 Email Brown to Hudson, Melton, Nathan (MP 27135-27136);
- 2020-12-10 Email Nathan to Hudson and Melton (MP 27137-27143);
- 2020-12-11 Email Brown to Melton and Group (MP 27144-27147); and,
- 2020-12-11 Email Nathan to Melton and Hudson (MP 27148-27156).

THIRD SUPPLEMENTAL RESPONSE: Since the last supplementation, the Plaintiffs have received, producing the following by Box.com:

- 2020-12-15 Email Nathan to Melton and Hudson (MP 27157-27166);
- 2021-02-09 Amended Req for Access (MP 27167);
- 2021-02-12 MDEQ to CN Minter City - ISCO Pilot Study Work Plan Response - 2.12.2021 (MP 27168-27169);
- 2021-02-16 Turner to Wallace and Hudson MDEQ (MP 27170-27173);
- Melton Properties 2010 (MP 27174-27226);
- Melton Properties 2011 (MP 27227-27274);
- Melton Properties 2012 (MP 27275-27323);
- Melton Properties 2013 (MP 27324-27363);
- Melton Properties 2014 (MP 27364-27403);
- Melton Properties 2015 (MP 27404-27441);
- Melton Properties 2016 (MP 27442-27483);

- Melton Properties 2017 (MP 27484-27522);
- Melton Properties 2018 (MP 27523-27564);
- Melton Properties 2019 (MP 27565-27605);
- 2021-02-04 Req for Access 2021-02-15 (MP 27606);
- 2021-02-04 Helena to Beckham Documents Produced by Helena 4 pages (MP 27607- 27610);
- 2021-02-19 Judice to Hudson 11102224-Hudson-25 - Complete (MP 27611-27651);
- 2021-02-26 GHD-CN to MDEQ 11102224-RPT-25 Rev. 2 - Complete (1) (Plan for Soil Pilot Study) (MP 27652-27700);
- 2021-03-10 McKercher field book Minter City scans (MP 27701-27710);
- 2021-03-12 (MP 27711-27712) MDEQ to CN Minter City - Revised ISCO Pilot Study Work Plan Response Letter 3-12-21;
- 2021-03-12 (MP 27713-28417) GHD-CN to MDEQ Pilot Study Air Sparge one Month Results 11102224-Hudson-23 — Complete;
- 2015-03-30 to 2021-03-14 Melton Time (MP 28418-28487);
- 2021-03-17 Text Messages Jackie GHD to Floyd III (MP 28488-28491);
- 2010 McMillian Tax Return (MP 28492-28543);
- 2011 McMillian Tax Return (MP 28544-28611);
- 2012 McMillian Tax Return (MP 28612-28681);
- 2013 McMillian Tax Return (MP 28682-28755);
- 2014 McMillian Tax Return (MP 28756-28793);
- 2015 McMillian Tax Return (MP 28794-28871);
- 2016 McMillian Tax Return (MP 28872-28887);
- 2017 McMillian Tax Return (MP 28888-28901);
- 2018 McMillian Tax Return (MP 28902-28922);
- 2019 McMillian Tax Return (MP 28923-28948);
- 2020 McMillian Tax Return (MP 28949-28970);
- 2021-04-02 Req for Access for week of Apr 12 (MP 28971);
- 2004-12-22 Sales and Purchase Contract and Agreement (MP 28972-28973);
- 2005-01-05 Closing Statement (MP 28974-28975);
- 2008-07-10 Appraisal (MP 28976-28994);
- 2010-04-30 Appraisal (MP 28995-29019);
- 2013-02-07 Appraisal (MP 29020-29081);
- 2016-03-13 Appraisal (MP 29082-29107); and
- 2016-03-23 Appraisal (MP 29108-29132).

FOURTH SUPPLEMENTAL RESPONSE: Since the last supplementation, the Plaintiffs have received, and are producing, the following by Box.com:

- Train photos by Floyd Melton, III dated 2022-02-14;
- Train photos by Floyd Melton, III dated 2022-02-11;
- 2021-04-23 GHD-CN - Fourth QTR GWM Sampling Report (MP 29133-29515).pdf;
- 2021-04-28 Corrected 2016 Lost Crop Report (MP 29516).pdf;
- 2021-04-28 Corrected 2017 Lost Crop Report (MP 29517).pdf;
- 2021-04-28 Corrected 2015-2019 Lost Crop Report (MP 29518).pdf
- 2021-05-05 Mark Morgan SEMS Expert Report (MP 29519-29567).pdf;
- 2021-05-05 E. Corbin McGriff Ph.D. SEMS — Melton Expert Opinions (MP 29568- 29582);
- 2021-05-05 Flechas Mentor Derailment Expert Report (MP 29583-29618);

this Order. Of note here is that Plaintiffs never made any objections or assertions of privilege in these supplemental responses.

As concerns what might be called damage experts, Plaintiffs designated Susan Smith, a Certified Public Accountant. In her expert report, Smith states "[t]he plaintiffs claim three different categories of damages: out of pocket expenses of $1.7 million inclusive of Plaintiffs' attorney's fees and expert fees; expenses paid directly following and related to the derailment and spill (Railroad Expenses), net lost crop revenue from 2015 to 2023 (Net Lost Crop Revenue), and professional time and mileage in excess of 2 million dollars invested in the post-spill

---

- 2021-05-04 Bullock Letter and Appraisal (MP 29619-29742).pdf;
- 2021-05-03 Declaration John Wilson (MP 29743-29751).pdf;
- 2021-05-04 Wilson Qualifications as an Expert (MP 29752-29755).pdf;
- 2021-05-03 Alan Grafton - Kcoe Isom Ltr to Connell (MP 29756-29759).pdf;
- Exhibit 8 2021-05-05 Harvey Stone - Melton v Illinois Central RR Report (MP 29760- 29810).pdf;
- 2024-02-29 Mark Morgan Final Report (MP 29811-29856).pdf;
- 2024-02-29 Flechas Expert Report - Final (MP 29857-29897).pdf;
- 2024-02-29 John Wilson Final Declaration on Progress of Remediation and Risk Evaluation (MP 29898-29928).pdf;
- John Wilson declaration and statement of qualifications 2024 (MP 29929-29932).pdf;
- 2024-02-29 Alan Blaine Final Report (MP 29933-29953).pdf;
- Alan Blaine Resume (MP 29954-29957).pdf;
- 2021-05-05 Harvey Stone - Melton v Illinois Central RR Report (MP 29958-30008).pdf;
- 2024 Harvey Stone Expert Witness Experience (MP 30009).pdf;
- 2024 Harvey Stone CV (MP 30010-30012).pdf;
- 2024-02-28 Stephanie Smith Final Expert Report (MP 30013-30171).pdf;
- 2021-05-04 Bullock Letter and Appraisal (MP 30172-30295).pdf;
- 2024-03 Interrogatory No. 13(a) Supplemental Response Attorney Fees (MP 30296- 30413).pdf;
- 2024-03 Interrogatory No. 13(b) Supplemental Response Expert Fees (MP 30414- 30475).pdf;
- 2024-03 Interrogatory No. 13(c) Supplemental Response Expenses (MP 30476- 30556).pdf;
- 2024-03 Interrogatory No. 13(d) Supplemental Response Lost Crop Revenue (MP 30557- 30567).pdf;
- 2024-03 Interrogatory No. 13(e) Supplemental Response Cost to Return Property to Physical Condition as Pre-Derailment (MP 30568-30572).pdf;
- 2024-03 Interrogatory No. 13(1) Supplemental Response Time Sheet Date, description, Time, House & ATV 2021-03 to 2024-02 (MP 30573-30596).pdf
- 2021-06-29 SEMS-Surface Water Sampling-Meltons (MP 30597-30616).pdf:
- 2024-03 Interrogatory No. 20 Supplemental Response Melton Land Farmed by Hargett (MP 30617-30664).pdf; and
- Big D.. Inc. - Invoices (MP 30665-30666) .pdf[.]

process [by the Melton plaintiffs] to insure the protection of human health and restoration of the environment (Professional Time and Mileage)." [Doc. No. 459-6] at 2.

In response, ICRR designated Forensic Accountant Reinhard Krestal. Krestal noted in his report that he was unable to fully evaluate Smith's opinions related to Plaintiffs' "attorney bills" because he was "unable to ascertain hours and rates billed, what tasks were performed and how the tasks pertain to this litigation" due to not having access to the itemized billing statements. Likewise, with regard to the plaintiffs' expert fees, Krestal states "[w]hile some of the invoices do include hours, rates, and personnel type, I am unable to ascertain what tasks were performed and how the tasks pertain to this litigation."

Discovery in this case, which has taken place in fits and starts since 2020 (due principally to court-ordered stays premised on the primary jurisdiction doctrine) will expire July 1, 2024, and trial is set for February 3, 2025.

Prior to May 8, 2024, even though ICRR had sought previously to compel supplementation of certain discovery responses of Plaintiffs, *see* [Doc. No. 311] (filed March 19, 2021), no mention of a need for further supplementation of Plaintiffs' discovery responses related to its claims for attorney fees or expenses had been raised by any party. However, on May 8, 2024, ICRR's counsel advised Plaintiffs' counsel, via email, in relevant part:

> Ted, I write regarding deposition scheduling and requested supplementation of your discovery responses…. Please provide any additional documentation that you have to support your claims related to reimbursement for attorneys and/or expert fees[.]

On May 16, 2024, in an informal discovery call with the undersigned, ICRR explained that while the plaintiffs had produced their attorney and expert fee invoices, reflecting the dollar amount of fees due, they had not received the itemization of time entries that ordinarily

accompany such invoices. ICRR took the position that these documents, together with itemized time entries were covered by Interrogatory No. 13 and by RFP No. 8, both from ICRR's 2nd set of discovery propounded on July 23, 2020. The plaintiffs disagreed on the basis that the documents had not been properly requested in discovery. And, even if so, they would be subject to attorney-client and work-product privileges. This motion to compel followed.

In the motion, ICRR re-asserts that Interrogatory No. 13 and/or RFP No. 8 request the production of the itemized time sheets that ordinarily accompany attorney and expert billing invoices. They also offer in support of the same that no objection to either the interrogatory or the RFP itself was asserted, no privilege was claimed, and no privilege log was provided to accompany any such claim.

In response, Plaintiffs assert that no RFP of the itemized time sheets was made, and even if so, the itemized time records are protected from production pursuant to the attorney-client privilege set forth in Mississippi Rule of Evidence 502 and by the attorney work-product doctrine. They also argue that even if they had been requested, that request would be objectionable on the basis that the itemized time records are not relevant unless and until Plaintiffs have established liability on the merits of their RCRA claim (as to attorney and expert fees) and/or gross negligence claim (as to their attorney fees).

By way of reply, ICRR notes that even as of the date of the plaintiffs' response to the motion to compel, no objection of any sort or assertion of privilege of any kind, much less a privilege log, was formally asserted by Plaintiffs in response to either Interrogatory No. 13 or RFP No. 8 (or otherwise). Also, they argue that it has been Plaintiffs who have asserted since the outset of the litigation entitlement to, as an element of compensatory damages, an amount equal to their incurred attorney fees and expert fees, even designating an expert to advance that claim.

And, since the Melton plaintiffs seek as an element of their compensatory damages their time as attorneys and landowners calculated at their regular legal hourly rate—and have disclosed detailed time records (over 70 pages worth) outlining the same and specifically including meeting/work in conjunction with their other counsel—ICRR would be unfairly prejudiced in its ability to defend against the assertion that the Meltons' fees were reasonably incurred. ICRR asserts, for example, that a review of the itemized time records could reveal that time spent by the Meltons was, in fact, duplicative of that sought by Plaintiffs as attorney fees actually incurred. They assert, too, that the Melton time spreadsheets document numerous lengthy conversations and meetings with Plaintiffs' experts and attorneys, such that the itemized attorney and expert billing statements are needed to verify the accuracy of Plaintiffs' claims for that lost time. Finally, ICRR asserts that without reviewing the itemized statements, it "cannot evaluate to what extent the fees were incurred on work related to the RCRA (and therefore are recoverable if Plaintiffs are successful on the merits of that claim) as opposed to one of the many other claims Plaintiffs have asserted in this case."

**The Law and Analysis**

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *Foster v. State Farm Fire & Cas.*, 2023 WL 9181333, at *3 (S.D. Miss. Mar. 13, 2023) (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)). Furthermore, even when privilege objections are timely asserted, the failure to produce a proper privilege log generally constitutes waiver of the privilege objections. *See, e.g., Beasley v. Lang*, 2018 WL 2072856, at *3-4 (S.D. Miss. May 2, 2018). On the other hand, Federal Rule 33(b)(4) provides that "[a]ny ground not stated in a timely objection

is waived *unless the court, for good cause, excuses the failure*." (emphasis added). "In deciding whether good cause exists, courts consider (1) the length of the delay in failing to object; (2) the reason for the delay; (3) whether there was any bad faith or dilatory action of the party that failed to object; (4) whether the party seeking discovery was prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Baker v. Walters*, 652 F.Supp.3d 768, 776 (N.D. Tex. Jan. 26, 2023) (quoting *Evanston Ins. V. McDonnell Coates LLP*, No. 3:20-cv-770-D, 2021 WL 2400992, at *3 (N.D. Tex. June 11, 2021)).

Against this backdrop, I find Interrogatory No. 13 does not of itself request production of anything, and since it only requests that Plaintiffs describe documents on which their computation of such damages was based, it is purely speculative – and unreasonable speculation at that – to assume Plaintiffs relied on itemized entries in calculating, as an element of their damages, approximately $1 million in attorney fees incurred and over $600,000 in expert fees. Accordingly, I do not find that Interrogatory No. 13, by its terms, required Plaintiffs to produce or describe the itemized time entries that give rise to the total incurred attorney fees they seek.

RFP No. 8, on the other hand, assuming it was not otherwise objectionable, could be construed to cover the itemized entries, if any actually were made and submitted to Plaintiffs in support of the total fee invoice, but it is objectionable for at least the reason that it is in violation of FRCP 34(b). That Rule requires a request for production to be reasonably specific. But, as drafted, RFP No. 8 asks for, among other documents, every document "related" to any documents identified in any of the 2nd set of over 15 interrogatories, many of which contain numerous subparts. The vagueness and overbroad character of RFP No. 8 is evident also from the apparent fact that the defendants who propounded it did not anticipate production of the

itemized time records themselves and thus made no mention of the same – though they did earlier seek to compel production of other documents – until after May 1, 2024, when their expert made his report indicating that the plaintiffs' expert's opinion regarding the fees could only be evaluated with the itemized time records.

As for the plaintiffs' assertion that the itemized time sheets are not subject to production under a blanket attorney-client and/or work-product privilege, such a blanket claim is improper. To the contrary, "[d]etermining the applicability of the privilege is a 'highly fact-specific' inquiry," and "it is interpreted narrowly so as to 'appl[y] only where necessary to achieve its purpose.'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695-96 (5th Cir. 2017). Indeed, Plaintiffs must demonstrate how each of their itemized billing statements include either "(1)…confidential communication; (2) to [their] lawyer or [] subordinate; (3) for the primary purpose of securing either a legal opinion…" or their "lawyer's research, analysis, legal theories, mental impressions, notes and memoranda of witnesses' statements." *See BDO USA, L.L.P.*, 876 F.3d at 695-96; *Dunn v. State Farm Fire & Cas. Co.*, 122 F.R.D. 507, 510 (N.D. Miss. 1998).

Further, "the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney…." *Dunn*, 122 F.R.D. at 509 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

Defendant also argues that by not producing the attorney time entries, it is significantly prejudiced since in this case Plaintiffs have apparently sought recovery, under some theory, of their incurred attorney and expert fees as an element of their compensatory damages. Defendant contends it needs the time records to show unreasonableness of the same. Plaintiffs assert, for their part, that requiring the production of the time records would unfairly advantage Defendant in that it would reveal, for example, strategy of Plaintiffs' counsel.

This entire circumstance is further complicated by the fact that at least one of the Meltons has filed an affidavit in this case asserting his role as an attorney, providing detailed time entries referencing work in that regard (as well as reflecting the work of other counsel) for which in excess of $2 million is sought as an element of compensatory damages.

In short, I find it inescapable to conclude anything but, under these circumstances, both Plaintiffs and Defendant have contributed to the current last minute discovery morass. I find also that having weighed the various factors involved here, the following is in order:

Plaintiffs will be required to produce their time entries to the extent they are not subject to the attorney-client or work-product privileges and have not been waived by disclosure in the 70 pages of Melton time entries already produced. Any matters as to which privilege is claimed shall be recorded in a privilege log pursuant to FRCP 26(b)(5) and Local Civil Rule 26(e). Plaintiffs were granted 14 days from the date of the hearing (or up to and including June 26, 2024) to produce the records redacted for the claimed privileges.

**SO ORDERED**, this the 14th day of June, 2024.

/s/ Jane M. Virden  
**UNITED STATES MAGISTRATE JUDGE**