IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MELTON PROPERTIES, LLC; et al.**                                         **PLAINTIFFS**

**v.**                                         **CIVIL ACTION NO. 4:18-cv-079-DMB-JMV**

**ILLINOIS CENTRAL RAILROAD COMPANY; et al.**            **DEFENDANTS**

## ORDER

This matter is before the court on Plaintiffs' motion [Doc. No. 454] to compel Defendant Illinois Central Railroad Company to fully respond to Plaintiffs' Interrogatory No. 28. For the reasons explained at the hearing on the motion to compel, and which are summarized below, the motion was granted in part.

By way of background, this action was filed on March 27, 2018, following a train derailment and spillage of heavy oil resins that occurred on or about March 30, 2018. The derailment and spillage are alleged to have contaminated Plaintiffs' agricultural land and otherwise caused them significant economic damages. Plaintiffs have asserted a number of legal theories of recovery against the railroad, to include, of relevance to this particular motion, a claim that Defendant's efforts to contain the spillage and restore Plaintiffs' land to its pre-spill condition was hindered, and thus the damages exacerbated, as a result of the railroad having:

> … negligently performed, or failed to perform, reasonable and necessary clean-up and remediation work to repair, restore or otherwise correct the damages resulting from the derailment, despite numerous requests and demands to do so. Such actions or inactions evidence Illinois Central's negligence, gross negligence, and bad faith. Upon information and belief, said actions are consistent with Illinois Central's pattern of practice in similar situations. Therefore, in addition to all actual damages caused, Illinois Central is liable for Plaintiffs' time, efforts, attorney fees, costs and expenses, and punitive damages due to its gross negligence.

[Doc. No. 127] at ¶ 81.

Discovery in the case has occurred in "fits and starts" due primarily to discovery stays pending remediation efforts. As it stands now, the discovery deadline is July 1, 2024. *Daubert* motions are due August 1, 2024, and dispositive motions are due September 2, 2024. Trial is set for February 3, 2025.

Interrogatory 28, at issue here, was propounded by Plaintiffs to Defendant on August 28, 2020, and reads as follows:

> **Interrogatory 28:** At the time of the derailment in question, please state the following:
> (a) The number of trains in a six-hour, twelve-hour, twenty-four-hour, thirty-six hour, and one-week period that normally pass over the tracks where the derailment in question occurred;
> (b) The average cost per hour in dollar amount per hour that is lost when the area of the track where the derailment occurred is out of use;
> (c) The average cost per day in dollar amount that is lost when the area of the track where the derailment occurred is out of use;
> (d) The average cost per week in dollar amount that is lost when the area of the track where the derailment occurred is out of use;
> (e) The average cost per month in a dollar amount that is lost when the area of the track where the derailment occurred is out of use; and
> (f) The cost in a dollar amount that was actually lost when the area of the track where the derailment in question occurred was out of use.

The railroad responded on October 5, 2020. The response reads:

> **RESPONSE:** Objection. The Interrogatory seeks irrelevant information, and information unrelated to the claims and defenses asserted in this lawsuit. The Interrogatory is also overly-broad, overly-broad in terms of time and location, unduly burdensome, and seeks opinions about matters that are not relevant to the claims and defenses in this suit. This Interrogatory also seeks confidential proprietary information.

This interrogatory response is signed by one of the defendant's prior defense lawyers, Glenn Beckham, of the law firm Upshaw, Williams, Biggers, Beckham & Riddick. Mr. Beckham subsequently (on January 13, 2024) withdrew as counsel for the defendant, but before doing so,

Beckham, in response to a good faith letter from Plaintiffs' counsel dated December 29, 2020, seeking supplementation[1], wrote on January 11, 2021: "…we stand by our previously submitted objections."

Following an informal discovery conference with the undersigned on February 11, 2021, Mr. Beckham ultimately produced and signed a formal supplemental response to Interrogatory 28 on March 15, 2021, as follows:

> **SUPPLEMENTAL RESPONSE:** In response to Interrogatory No. 28(a), according to Illinois Central's transportation department, the following number of trains passed through the area of the derailment on the following dates:
>
> 3/24/15 - 13
>
> 3/25/15-17
>
> 3/26/15 - 12
>
> 3/27/15 - 19
>
> 3/28/15-16
>
> 3/29/15 - 16
>
> 3/30/15 - 12
>
> 4/1/15 - 18
>
> 4/2/15 - 18
>
> 4/3/15 - 16
>
> 4/4/15 - 18
>
> 4/5/15 – 18

---

[1] Plaintiffs' counsel wrote: "this question [Int. 28] requests specific information regarding the number of trains and various costs. We think the question is narrowly asked and relevant as we allege and argue that your client was more concerned about getting the tracks back in place and trains running as opposed to the spill and that every minute trains were not running, that your client was losing money. Thus, we think this information is discoverable."

Defendant reasserts its objections to Interrogatory No. 28**(b)-(f)** (emphasis added by the court).

The supplemental response is signed, in relevant part, as follows:

RESPECTFULLY SUBMITTED, this the 15th day of March, 2021.

           UPSHAW, WILLIAMS,
             BIGGERS &
            BECKHAM, LLP

BY: *[signature]*

          GLENN F. BECKHAM, MBN: 2309

Remaining dissatisfied with the defendant's response, which remained only in the form of objections as to Interrogatory No. 28**(b)-(f)**, on April 22, 2021, Plaintiff Melton Properties, LLC moved to compel [Doc. No. 329] further responses to Interrogatory No. 28**(b)-(f)**. The defendant railroad filed its response to the motion on May 3, 2021 [Doc. No. 331], and Melton Properties, LLC replied on May 14, 2021 [Doc. No. 350].

On the same day, District Judge Debra Brown, acting pursuant to the primary jurisdiction doctrine, stayed the case in its entirety for 6 months [Doc. No. 351].

On November 6, 2021, the stay was extended and on March 7, 2022, the aforesaid motion to compel was denied due to the stay with the right to re-urge it on lifting of the stay. Ultimately, the stay was lifted on November 23, 2023, and new deadlines were set including a new trial date and on May 23, 2024, Plaintiff re-urged its earlier motion to compel a response to Interrogatory No. 28(b)-(f). Defendant filed its response in opposition [Doc. No. 465] on May 31, 2024. A reply was filed June 4, 2024.

## The Motion to Compel

By the instant motion, Plaintiffs seek to compel Defendant to answer Interrogatory No. 28**(b)-(f)**. In summary, 28**(b)-(e)** ask Defendant to identify "the average cost" to the railroad, expressed in dollars, occurring per hour, day, week and per month when the area of the track where the derailment occurred is out of use. Interrogatory 28**(f)**, on the other hand, asks for the "cost in a dollar amount that was *actually* lost when the area of the track where the derailment occurred was out of use. Plaintiffs contend that this information will demonstrate why the railroad was motivated to focus its efforts and money spent immediately following the derailment and spill on getting the tracks up and operating as quickly as possible, all to the detriment of clean up/remediation efforts designed to mitigate the losses occasioned to the plaintiffs' land and farming operations on account of the derailment and spill.  According to Plaintiffs, the defendant is capable of determining both the average cost and the actual cost incurred to the railroad due to the inoperable tracks at the site of the derailment.  In fact, though Plaintiffs offer no facts in support of the same, they assert that this information is "readily available" to the railroad. And, they contend, again without offering any supporting facts, that the actual loss is already known to the railroad "to the penny" but the railroad "just does not want to provide the information."

In response to the motion to compel, the railroad offers the following arguments:

(1) since the actual time that the tracks were out of operation is known and was only 1.5 days, knowing what the losses to the railroad would have been had the tracks remained in operable for longer is irrelevant;

(2) information designed to illustrate that defendant cut corners in the remediation efforts in order to promptly restore train traffic and mitigate its own losses is not relevant since that claim is not made in this case;

(3) efforts made to retore the tracks to operation were not performed with detriment to the efforts being made to remediate the spillage;

(4) counsel for Illinois Central has been advised that calculations of average costs due to a derailment or the freight revenue costs or losses caused by this derailment have not been made by the railroad;

(5) even if such calculations were to be made, it would necessarily involve an analysis of every rail car on every train that was stopped due to the derailment, a determination as to where each car was supposed to go and when it was to be delivered, and whether there were any penalties for late delivery. In other words, the railroad would have to look at every contract for every customer whose freight was delayed for the one and one half days taken to place the track back in service;

(6) such calculations would at best be a guess since defendant could not be expected to think of, and therefore calculate for every circumstance that might have been occasioned by the derailment. To illustrate, the railroad provides the following example: A potential freight customer of Illinois Central might have heard about the derailment, recognize that shipment might be delayed for a one and a half days, and simply have elected to use some other freight service rather than Illinois Central; and

(7) the railroad's contracts with its customers contain confidential proprietary pricing information that its competitors could use against it.

In reply, Plaintiffs assert that the financial information Plaintiffs seek "is absolutely relevant to the issue of ICRR's economic motives" to perform track repair efforts to the detriment of those devoted to remediation – an issue that Plaintiffs contend is in vehement dispute in this case and gives rise to Plaintiffs' claims for punitive damages. Plaintiffs also assert the railroad has not demonstrated that to produce the requested financial information – even if it does not already exist – would be an overly burdensome task given the circumstances of this case; and the argument that such calculations would not necessarily be inclusive of all losses incurred, makes, them no less relevant as estimates.

**Law and Analysis**

FRCP Rule 33 states in relevant part the following: that if a party is a public or private corporation, the interrogatories must be answered by an officer or agent of said corporation

(FRCP 33(b)(1)(B)); each interrogatory must be answered fully in writing under oath, to the extent it is not objected to (FRCP 33(b)(3)); and that the grounds for objecting to a given interrogatory must be stated with specificity (FRCP 33(b)(4)).

In a previous Northern District case, Chief District Judge Debra M. Brown effectively described the interplay between the Federal Rules of Civil Procedure and boilerplate objections:

> The Federal Rules of Civil Procedure require that a party objecting to interrogatories or requests for production state with specificity the reasons for the objection. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ. P. 33(b)(2)(B) ("For each [request for production], the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request."). To satisfy the specificity requirement of this rule, a party may not make "[g]eneral or boilerplate objections." *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 161 (N.D. Tex. 2018). "General, boilerplate, and unsupported objections to discovery requests that fail to state their grounds with specificity are improper and result in waiver of those objections." *Cinco Bayous, LLC v. Samson Expl., LLC*, No. 1:19-cv-452, 2020 WL 4926430, at *3 (E.D. Tex. Aug. 21, 2020) (collecting authorities).

*Amos v. Taylor*, 4:20-CV-7-DMB-JMV, 2020 WL 7049848, at *7 (N.D. Miss. Dec. 1, 2020).

Common boilerplate objections include "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case." *Id.* (citing *Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 4:20-CV-42, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020). Mississippi courts have previously determined these kinds of objections to be insufficient. *See Wurlitzer Co. v. E.E.O.C.*, 50 F.R.D. 421, 424 (N.D. Miss. 1970) (stating that "general objections that the information sought [is] irrelevant, immaterial, oppressive, conclusory or already in possession of the requesting party [are] insufficient."); *see also Carr v. Conoco Plastics*, No. 6861, 1969 WL 104, at *2 (N.D. Miss. June 16, 1969) ("A general objection that interrogatories are onerous and burdensome and require the party to make research and compile data raises no issue. The objection must make a specific showing of reasons why the interrogatory should not be

answered."). Further, where objections are asserted collectively and are not tailored to a specific discovery request, they are typically deemed boilerplate.

In the instant case, it is plain that the defendant's objections asserted collectively in response to each of the subparts of the interrogatory, both originally and by way of supplement on March 15, 2021, are purely boilerplate and improperly made. No effort whatsoever is made to delineate which of the number of conclusory objections such as overbreadth, burdensomeness, relevance, and confidentiality pertain to which of the different unanswered subparts of Interrogatory 28, much less are there any facts stated in the response offered to support the objections, such as facts illustrating why, given the damages alleged in this case, answering the particular request for information would be unduly burdensome, does not already exist, or is irrelevant.

Furthermore, while it is accurate that Federal Rule of Civil Procedure 33(b)(5) requires that where objections are asserted in response to a discovery request, an attorney must sign the responses, and that in the instant case, the defendant's former litigation counsel Mr. Beckham did so, that signature does not relieve the party itself – in this case a sophisticated entity – of signing and verifying under oath through its designated agent the veracity of any actual information provided in response to the discovery request. *See Samsung Electronics America, Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 282 (N.D. Tex. June 26, 2017) ("Answers to interrogatories must be written, and signed under oath by the party to whom the interrogatories were directed—not his or her attorney.") (quoting *Crum & Forster Specialty Ins. Co. v. Explo Sys., Inc.*, No. 12-3080, 2015 WL 7736650, at *3 n.7 (W.D. La. Nov. 30, 2015). Specifically, Federal Rule of Civil Procedure 33(b)(3) states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Further still, in the

instant case the responsive information ultimately provided in response to Interrogatory 28(a) is neither signed by the party or verified under oath by the same.

Also, while the defendant's litigation counsel, by way of response to the instant motion to compel, has undertaken to offer some explanation for some of the railroad's assertion of only boilerplate objections in response to Interrogatory 28(b)-(f), such as that the actual loss data – occasioned by the rail system disruption – does not exist, that assertion of fact is made only by counsel and is unverified under oath by the party as required by FRCP 33.

In short, I find that the defendant's response to Interrogatory 28(a)-(f) is improper both due to being unverified and otherwise offering nothing more than boilerplate objections. The railroad will have 14 days, from the date of the hearing, to provide the verified, reasonably obtainable responsive information to Interrogatory 28, including subparts other than (c) through (e).[2] To the extent the railroad asserts an objection to any one or more subparts of Interrogatory 28, it is to tie the same to the particular inquiry to which it relates and explain why the objection is applicable. To be sure, it may well be that the railroad avers, after making a reasonable search for the same, that no responsive information to any particular inquiry exists or is obtainable, but in that event, it must so state in its verified response.

To close, and in an effort to facilitate the defendant's compliance with this order, I find that to the extent the average hourly cost and the actual cost to the railroad as a result of the 1.5 days of inoperable track is known or reasonably ascertainable, it should be provided and if not known or reasonably ascertainable that verified information should be provided. In addition, the information provided in response to Interrogatory No. 28(a) must be verified.

---

[2] I find subparts 28(c)-(e) to be essentially duplicative of 28(b).

**SO ORDERED**, this the 14th day of June, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**